UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*In Re Ex Parte* Application of Porsche
Automobil Holding SE for an Order
Pursuant to 28 U.S.C. § 1782 Granting
Leave to Obtain Discovery for Use in
Foreign Proceedings

CIVIL ACTION NO. 19-mc-91129-LTS

MEMORANDUM AND ORDER ON
JOHN HANCOCK ADVISERS, LLC, JOHN HANCOCK INVESTMENT MANAGEMENT
SERVICES, LLC, AND JOHN HANCOCK LIFE INSURANCE CO. (U.S.A.)'S MOTION TO
VACATE OR MODIFY *EX PARTE* ORDER PERMITTING DISCOVERY PURSUANT TO
28 U.S.C. § 1782 AND TO QUASH OR MODIFY THE SUBPOENAS (#21).

KELLEY, U.S.M.J

I. <u>Introduction</u>.

This action involves a motion to vacate or modify an *ex parte* order permitting discovery

in a foreign proceeding pursuant to 28 U.S.C. § 1782 and to quash or modify the resultant

subpoenas. (#21.) Section 1782 allows litigants in foreign proceedings to obtain evidence from

persons who reside or who are found in the United States for use in the foreign tribunal. For the

reasons set out below, the court denies the motion to quash, but narrows the subpoenas, because

they are overbroad, and orders the parties to submit a protective order. The court denies the

Hancock entities' request for reciprocal discovery.

On April 5, 2019, Porsche Automobil Holding SE (Porsche)[1] filed an application under 28

U.S.C. § 1782 to serve subpoenas on John Hancock Advisors, LLC, John Hancock Investment

---

[1] Porsche "is a German holding company organized under the laws of the European Union and
Germany." (#3 at 2 ¶ 3); *see also* REUTERS, https://www.reuters.com/companies/PSHG_p.DE (last

Management Services, LLC, and John Hancock Life Insurance Co. (U.S.A.) (the Hancock entities), as well as Finepoint Capital LP, Finepoint Partners, LLC, and FPCAP LLC (the Finepoint entities). (#1 at 1.) The subpoenas seek production of documents and deposition testimony for use in multiple civil actions against Porsche in the German Regional and Higher Regional Courts of Stuttgart and Braunschweig, among others, by large investors (the German actions). (#2 at 5.) The plaintiffs in the German actions claim that Porsche had knowledge of emissions modifications in certain vehicles that qualified as unlawful "defeat devices" under U.S. law. (#3 at 3.) The German plaintiffs allege that Porsche's omissions and misstatements impacted the price of Porsche's "preferred shares, which are publicly traded on German stock exchanges," and that they "suffered losses for which they now seek recovery." (#2 at 3.)

The German actions involve approximately 200 separate legal proceedings, including a "Model Case" in Braunschweig, which is somewhat similar to class action litigation in the United States, and an individual action filed by Craig Broomley "exclusively acting as Trustee of John Hancock Variable Insurance Trust, John Hancock Funds II[,] and John Hancock Funds III" (the Hancock plaintiffs) in Stuttgart. *Id.* at 5, 9–10; #2-1 at 3–4. The Hancock plaintiffs have claimed damages of approximately 5.75 million euros in their individual action. (#3 at 3 ¶ 6.)[2]

---

visited Sept. 25, 2019). Although Porsche "currently holds more than 50% of the voting rights in [Volkswagen AG], a German car manufacturer selling under the brands Volkswagen, Porsche, Audi, and others (['VW Group'])," it "is legally and operationally independent of" Volkswagen AG. (#3 at 2 ¶ 3.)

[2] Finepoint Capital LP is the only party to any of the German actions subject to Porsche's application. (#2-1 at 2.) The Hancock entities and the remaining Finepoint entities maintain records of the securities transactions conducted by the German plaintiffs and are general partners or investment managers of the German plaintiffs, including the Hancock plaintiffs. *Id.* at 2–4. In its application for an *ex parte* order, Porsche contends that, because they make management decisions on behalf of the Hancock plaintiffs, the Hancock entities likely possess information relevant to Porsche's defenses in the German actions. (#2 at 8.)

On April 9, 2019, District Court Judge Leo Sorokin entered an order granting Porsche's application. (#11 at 1–2.) The subpoenas were served on April 16 and 17, 2019. (#13 at 1.) On June 18, 2019, the Hancock entities filed the present motion. (#21.) Porsche opposed. (#29.) Judge Sorokin referred the Hancock entities' motion to this court. (#31.) On September 17, 2019, after the parties filed responsive briefs, oral argument was held. (#54.) The court took the matter under advisement and ordered the parties to file a joint memorandum setting out the discovery that had already been provided by the Hancock entities, which they did. (#55 at 58, ll. 14–16; 59, ll. 7–8; #57 (joint memorandum).)

## II. <u>Facts</u>.

Beginning in April 2016, various investors in Porsche securities (the German plaintiffs) began to file suit against Porsche in Germany, alleging securities fraud arising from Porsche's "purported failure to disclose or the inaccurate disclosure of emissions modifications in certain diesel vehicles manufactured by Volkswagen AG . . . ." (#2 at 5.) According to Porsche, the German plaintiffs contend that Porsche "failed to issue a purportedly required *ad hoc* notification disclosing the diesel issue" and as a result, is subject to liability under section 37b of the German Security Trading Act. *Id*. at 8–9 (citing #3 at 5 ¶ 11). "Plaintiffs also assert tort claims under sections 823 and 826 of the German Civil Code based on [Porsche's] alleged failure to issue an *ad hoc* notification and based on alleged misrepresentations in financial reports regarding the diesel issue. . . ." *Id*. at 9.

---

Porsche's counsel indicated that the Finepoint entities have also objected to the subpoena Porsche submitted, but asked that Porsche "await to see what happens with respect to the John Hancock respondents." (#55 at 4, ll. 14–20.)

Porsche now seeks discovery from the Hancock entities for use in both the Model Case in Braunschweig and the individual Hancock action in Stuttgart. (#55 at 43, ll. 11–13.) Porsche requests production of documents and Rule 30(b)(6) deposition testimony regarding "(1) accounting information concerning the sale and purchase of [Porsche and Volkswagen AG stock] shares and related securities with a value tied to [Porsche and Volkswagen AG shares], as well as relevant lending transactions in such shares and other securities; and (2) trading or investment strategies that involved [Porsche or Volkswagen] shares or related financial instruments." (#2 at 14–15.)[3]

---

[3] The subpoenas seek the following:

1. Documents sufficient to show each transaction (including, but not limited to, short sales, closing of short periods, and lending transactions) in Relevant Securities made between January 1, 2012 and December 31, 2015, including, with respect to each transaction;

     i.     the date and time of the transaction;

     ii.     the price of the Relevant Security or Relevant Securities;

     iii.     the book value, if any, of the Relevant Security or Relevant Securities on the date of the transaction;

     iv.     the contractual conditions underlying the transaction;

     v.     any recorded profit or loss (regardless of whether the profit or loss accrued during the specified time period);

     vi.     the associated fund or beneficial owner and account number;

     vii.     the Relevant Security or Relevant Securities' depositary and sub-account registration numbers;

     viii.     in the case of a stock lending transaction, the lending fees paid or received;

<blockquote>

    ix.      in the case of an options or derivatives transaction, the premiums paid or received, the strike price, the maturity date, and the underlying Security or Securities;

    x.      in the case of a single investment or divestment decision executed through several transactions, the date and size of the initial investment or divestment decision and which execution transactions were related to the decision;

    xi.      whether a certificate or share in a certificate was associated with the Relevant Security or Securities;

    xii.      the registration number, if any, for each and every certificate or share in a certificate associated with the Relevant Security or Securities; and

    xiii.      any other specifications that permit the matching of Your individual sale and purchase transactions of Relevant Securities.

</blockquote>

2. Documents sufficient to show the amount and type of Relevant Securities held on January 1, 2012 and on September 21, 2015, by or in each fund, account, or sub-account identified in response to Request No. 1(vi)–(vii), as well as the book values of such Relevant Securities as of January 1, 2012 and September 21, 2015, and the specific contractual conditions, in particular prices, underlying the transactions by which the Relevant Securities were acquired.

3. Documents sufficient to show the process by which each and every Relevant Security identified in response to Request No. 1 was transferred between the parties to the transaction, including, but not limited to, the process by which each and every certificate or share in a certificate identified in response to Request No. 1(xi) or (xii) was transferred between the parties to the transaction.

4. Documents sufficient to show how sales and purchase transactions identified in response to Request No. 1 were matched or allocated for internal accounting, tax accounting, or any other purposes, including Documents sufficient to show Your applicable rules, polices, procedures or practices if no actual match or allocation of sales and purchase transactions were made.

5. All fund account statements and depository account statements referencing the transactions identified in response to Request No. 1.

6. All Documents and Communications concerning any actual, intended, contemplated, or possible transactions in or holding of any Relevant Securities, including, but not limited to, all Documents and Communications concerning the decision or strategy to enter into, terminate, or hedge any investment or transaction in Relevant Securities, as well as the specific contractual conditions underlying the

Porsche asserts that the information sought is relevant to three of its defenses in the Model Case and in the individual Hancock action. (#2 at 10 (citing #3 at ¶ 16).) First, "at least some of the transactions on which the German [p]laintiffs have based their claims are not legally cognizable," because "[a]s a matter of German law, a plaintiff may only claim damages with respect to transactions carried out after the time when [Porsche] should have released the allegedly required *ad hoc* notification." *Id.* (citing #3 at 6 ¶ 13.) A further prerequisite to claiming damages with respect to these transactions under German law "is that the plaintiff must have continued to hold these shares at the time the relevant inside information was disclosed, which in the German [a]ctions was September 18, 2015, when the U.S. Environmental Protection Agency published its

---

respective transaction, in particular the price of any sale or purchase of Relevant Securities and the book value, if any, of the respective Relevant Securities on the day of the respective transaction.

7. All Documents and Communications made between January 1, 2012 and September 18, 2015 concerning emissions from or the environmental impact of Volkswagen, Audi, or Porsche diesel vehicles, including, but not limited to, all Documents and Communications concerning the use of clean diesel technology, turbocharged direct injection or TDI engines, or defeat devices in Volkswagen, Audi, or Porsche diesel vehicles.

(#2-2 at 9–12.) The subpoenas define a "relevant security" in broad terms:

(i) any Security or Securities issued by Volkswagen AG or Porsche . . . ,

(ii) any Security or Securities issued by an entity (or entities) other than Volkswagen AG or Porsche Automobil Holding SE and referring to, relating to, or connected with Volkswagen AG ordinary or preference shares or Porsche Automobil . . . preference shares, whether in whole or in part, or

(iii) any Securities that are part of, reference, or correspond with any of Respondent's trading strategies relating to securities issued by Volkswagen AG or Porsche . . . , including but not limited to hedging.

*Id.* at 6.

notice of violation" to Volkswagen AG regarding the diesel issue. (#3 at 6 ¶ 13.) The period between the "allegedly required *ad hoc* disclosure and September 18, 2015, is referred to as the 'disinformation period.'" (#2 at 11 (citing #3 at 6 ¶ 13).) Porsche asserts that the plaintiffs "sold certain shares on which their claims are predicated during the disinformation period, and therefore did not hold those shares at the time the relevant inside information was released, as required to claim damages." *Id*.

Porsche has also asserted as a defense "that the German [p]laintiffs have overstated their alleged damages by accounting only for certain transactions in [Porsche] shares, even though those transactions . . . were likely part and parcel of broader trading strategies, including hedging, that (in whole or in part) offset the purported losses associated with the transactions in [Porsche] shares." *Id*. (citing #3 at 6 ¶ 14). Therefore, the benefits the German plaintiffs received from related transactions, such as hedging, "must be deducted from the amount of damages claimed." *Id.*[4]

Finally, Porsche maintains that the German plaintiffs have not met the reliance element required to sustain their tort claims, because their Porsche "share transactions were part of broader trading strategies that . . . would have incentivized the German [p]laintiffs to conduct transactions regardless of any diesel issue by" Porsche. *Id.* at 12 (citing #3 at 7 ¶ 15). Put differently, Porsche

---

[4] In its declaration in support of its § 1782 application, Porsche explained:

> [R]elated transactions are particularly likely to have involved [Volkswagen AG] ordinary and preference shares. Since [Volkswagen AG] ordinary shares are the largest asset of [Porsche], movements in the share price of [Volkswagen] shares are usually mirrored by the stock price of the [Porsche] share. This link is often used by investors in various investment strategies. [Porsche] argues that the benefits the German [p]laintiffs received from related transactions (*e.g.*, hedging transactions or other transactions in [Porsche] or [Volkswagen] shares or options during the disinformation period that generated profits for the respective plaintiff) have to be deducted from alleged damage amounts.

(#3 at 6–7 ¶ 14.)

seeks to establish that the Hancock plaintiffs did not rely on any alleged statements from Porsche required to establish securities fraud, but rather, purchased or sold the Porsche or Volkswagen AG shares as part of a "unified hedging strategy[,]" and "were going to hedge and sell no matter what, regardless of what information should have been disclosed." (#55 at 42, ll. 4–7; 43, ll. 2–4.)

Porsche's requests are based in part on certain comments made by the Higher Regional Court of Braunschweig[5] at a hearing on November 26, 2018, where the court requested that the parties provide "further input" on damages issues Porsche raised, "including providing practical examples" of how to calculate the damages. (#2 at 12 (citing #3 at 8 ¶ 17).) With regard to the issue regarding the timing of the purchase of the shares, which may also relate to liability (#55 at 42, ll. 8–14), the German court made a preliminary determination that the plaintiffs "bear the burden of pleading and proving that they did not resell the particular shares that form the basis of their claim during the disinformation period." (#2 at 12–13 (citing #3 at 8 ¶ 18).) Conversely, with regard to tort claims, the court indicated that plaintiffs could claim losses for "any share purchased during the 'disinformation period' without needing to affirmatively demonstrate that the share was

[5] The case before the Higher Regional Court of Braunschweig is the "Model Case" in the German actions pursuant to the German Act on Model Case Proceedings in Disputes Regarding Capital Market Information (the Model Case Act). (#2 at 9 (citing #3 at 4 ¶ 8).)

According to Porsche,

> the Model Case Act establishes a procedure in a [German] Higher Regional Court for adjudication of legal and factual questions common to at least ten securities actions. Similar in certain ways to U.S. class-action and multidistrict litigation, the model case stays related actions where a Higher Regional Court decides common questions in [the] one model case. The outcome of the model case proceeding has a binding effect on all related cases involving similar claims . . . .

*Id.* at 9 (citing #3 at 4 ¶ 8). Though it has yet to be stayed, both Porsche and the Hancock entities believe that the individual Hancock action against Porsche in Stuttgart will be stayed pending the resolution of the Model Case. (#3 at 4 ¶ 9; #23 at 7 ¶ 20.)

held until at least September 18, 2015." *Id.* (citing #3 at 8–9 ¶ 19).) However, it invited Porsche "to establish . . . a more suitable way to allocate purchase and sale transactions within the 'disinformation period'" by presenting "examples based on actual data[.]" *Id.*

As to Porsche's second claim, the court stated its preliminary view "that only closely related transactions should be considered for a deduction[,]" and "in the absence of a specific link between different share transactions, only the sale and purchase of the same share would be sufficiently related." *Id.* at 13 (citing #3 at 9 ¶ 20). However, as it did with Porsche's first claim, the court "requested practical examples that demonstrate the effect of accounting for transactions other than the purchase and sale of the [Porsche] shares on which the plaintiffs based their claims." *Id.* (citing #3 at 9 ¶ 20). Porsche contends that, based on the examples it provides, "the court may decide that certain types of related transactions should be deducted from the claimed damages." *Id.*

Regarding Porsche's third claim, concerning reliance, the court determined that, while "the German [p]laintiffs would not be obligated to account for all possible related transactions included in their investment strategy in order to meet their burden," Porsche "would be able to offer related transactions to disprove the existence of reliance." *Id.* at 14 (citing #3 at 9–10 ¶ 21).) Porsche maintains that, like "the practical examples that the [German court] requested to inform its consideration of the appropriate burdens with respect to the sale and purchase allocation and deduction of related transactions, information about the German [p]laintiffs' investment strategies will be relevant to the court's continuing evaluation of the appropriate burden with respect to reliance." (#3 at 10 ¶ 21.)

In response to this court's order for the parties to set out what discovery the Hancock plaintiffs already had produced in the German actions, Porsche indicated that the Hancock

plaintiffs had produced transactional data, comprised of the date, quantity, and price for transactions in Porsche shares, "as well as the name of the supervising trust, fund name and number, transaction type (buy or sell), currency, and security ([Porsche] preferred shares, in all cases)." (#57 at 3.) Porsche contends that, although the Hancock entities have since offered to produce corresponding Volkswagen AG transactional data, they have still "not agreed to produce information describing their investment strategies with respect to [Porsche or Volkswagen AG] shares, or data concerning other related transactions needed by [Porsche] to support [this] defense." *Id*. at 6.

## III. Analysis.

### A. The law pertaining to 28 U.S.C. § 1782.

Section 1782(a) provides that a federal district court may order a person residing or found in the district to give testimony or produce documents for use in a proceeding in a foreign or international tribunal, upon the application of any interested person. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Device, Inc.*, 542 U.S. 241, 246 (2004). Thus, to obtain discovery under § 1782, as a preliminary matter, a petitioner must meet three statutory requirements: (1) the order must be issued by the district court of the district in which the respondent resides or is found; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by an interested person. *Chevron Corp. v. Shefftz*, 754 F. Supp.2d 254, 260 (D. Mass. 2010). The material sought cannot be protected by "any legally applicable privilege." 28 U.S.C. § 1782(a); *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018). The party seeking discovery bears the burden of establishing that § 1782's statutory requirements are met. *In re Schlich*, 893 F.3d at 49.

"Even if a court is authorized to grant discovery under § 1782, it is not required to do so." *Chevron*, 754 F. Supp.2d at 260. Rather, "courts must exercise their discretion under § 1782 in

light of the twin aims of the statute: 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Schlich*, 893 F.3d at 46–47 (quoting *Intel*, 542 U.S. at 252). After a court determines that the statutory requirements of § 1782 are met, it evaluates the following discretionary factors: (1) "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) generally is not as apparent'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'"; and (4) "whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." *Id.* at 47 (quoting *Intel*, 542 U.S. at 264–65). The First Circuit has noted that it does "not see the factors as creating a 'burden' for either party to meet, but rather as considerations to guide the . . . court's decision" about whether to allow discovery. *Id.* at 50.

In addition to the discretion afforded by §1782 to limit the scope of discovery, Rule 26 of the Federal Rules of Civil Procedure allows the court to narrow discovery requests. *In re Apotex. Inc.*, No. M12-160, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009). Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* Because "discovery itself is designed to help define and clarify the issues[,]" Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that

could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).

B. The statutory requirements are met.

It is not disputed that the Hancock entities are "found" in the District of Massachusetts and that Porsche is an "interested person" pursuant to § 1782. Thus, the only question concerning the statutory requirements is whether the discovery Porsche seeks is "for use" in the German actions.

The Hancock entities argue that the discovery requests fail to meet § 1782's "for use" requirement because the documents sought are irrelevant to the German actions. (#22 at 8–9.) *See In re Schlich*, 893 F.3d at 52 ("a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will fail to meet the statutory 'for use' requirement, and must be denied before the court reaches the discretionary *Intel* factors"). First, the Hancock entities argue that Porsche's proposed definition of a "relevant security" is too broad, because it would include "any derivatives or options trading, or any hedging contract, with some remote connection to any type of Volkswagen or Porsche securities . . . ." (#22 at 9.) According to the Hancock entities, because many of the securities they "purchased or sold are part of some comprehensive strategy to have a balanced and diversified portfolio," the information Porsche seeks "could potentially involve nearly every security traded during a four-year period anywhere in the world." *Id.* at 12. Second, Porsche's requests are irrelevant because German courts have held that "gains from transactions in other securities do not offset recoverable damages under . . . Germany's Securities Trading Act[.]" *Id.* (citations omitted).

These arguments are flawed in several respects. Although the Hancock entities make compelling arguments as to why Porsche's subpoenas are overbroad and unduly burdensome under *Intel's* fourth factor, Porsche's requests are clearly relevant to the issue of damages and,

potentially, liability, for the reasons Porsche detailed in its memorandum in support of its application. *Id*. at 10–15. The Higher Regional Court in Braunschweig specifically requested that the parties provide "further input" on the damages issues Porsche raised, "including practical examples" of how to calculate the damages. *Id.* at 12. While the German court may ultimately reject Porsche's proposed damages calculations in the Model Case, it is well-settled that "[p]etitioners are not required to show that the information they seek would be discoverable or admissible in [foreign] litigation] in order to satisfy" the "for use" requirement. *Minis v. Thomson*, No. 14-91050-DJC, 2014 U.S. Dist. LEXIS 54220, at *6 (D. Mass. Apr. 18, 2014) (citing *Intel*, 542 U.S. at 260–62, and *Chevron*, 762 F. Supp.2d at 251) (discovery petitioners sought was "for use" in the foreign proceedings when they made a claim for adverse possession and sought information regarding ownership of the land at issue); *see also Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*, No. 18-mc-91406-PBS, 2019 U.S. Dist. LEXIS 116920, at *7 (D. Mass. Jul. 15, 2019) (discovery "for use" pursuant to § 1782 when petitioner had "stated [an] intent to pursue a legal action and articulated a facially legitimate reason for pursuing . . . discovery").

Relatedly, the Supreme Court made clear in *Intel* that the foreign proceeding only needs to be within "reasonable contemplation[,]" rather than "pending" or "imminent." *Intel*, 542 U.S. at 247. Thus, the discovery Porsche seeks may also be relevant in determining damages in the Hancock plaintiffs' individual action in Stuttgart. Porsche's counsel correctly pointed out at the September 17th hearing that, even if the Hancock plaintiffs' individual action in Stuttgart is stayed pending the resolution of the Model Case, "that does not preclude Porsche from submitting evidence to that court." (#55 at 43, ll. 20–23.) *See Chevron*, 754 F. Supp.2d at 260 (evidence was for use in foreign proceeding when the foreign court had "yet to issue an order closing the case to the submission of new evidence"); *Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) (petitioner

had satisfied § 1782's "for use" requirement by showing that the materials she sought were "to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below").

For the above reasons, the court finds that the discovery Porsche seeks is "for use" in the German actions, and the statutory requirements are met.

C. The *Intel* discretionary factors weigh in favor of allowing discovery.

1. The information sought is not within the German court's jurisdictional reach.

When the person from whom discovery is sought is a participant in the foreign proceeding, "the need for § 1782(a) aid is not as apparent as it ordinarily is when [the] evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Because the foreign tribunal has jurisdiction over those appearing before it, it can order them to produce evidence. *Id.* "In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Whether the target of the subpoena is a participant in the foreign action, however, is only one part of the inquiry, because the critical question is whether the information targeted is within the foreign tribunal's jurisdictional reach. *See Chevron*, 754 F. Supp.2d at 261 (first *Intel* factor weighed "heavily" in favor of granting discovery where the respondent resided outside foreign courts' jurisdiction and foreign courts therefore could not order the discovery petitioner sought in his § 1782 action); *In re Penner*, No. 17-CV-12136-IT, 2017 U.S. Dist. LEXIS 193457, at *7 (D. Mass. Nov. 22, 2017) (first *Intel* factor weighed in favor of petitioners when respondents appeared to be outside foreign court's jurisdiction); *In re Application of OOO Promnesfstroy*, Misc. No. M 19-99 (RJS), 2009 U.S. Dist. LEXIS 98610, at **14–15 (S.D.N.Y. Oct. 15, 2009) (first *Intel* factor

weighed in favor of the respondent, although he himself was not a party to the foreign proceeding, because the "vast majority" of the petitioner's § 1782 application covered documents that were within the possession of the parties to the foreign proceeding).

The Hancock entities concede that they are not parties to the German actions, but they argue that they are "considered participants" in the German actions because they are corporate affiliates of the Hancock plaintiffs (#36 at 5 n.1), and, in fact, they refer to themselves as the "Hancock Class Members" throughout their pleadings. *See, e.g.*, *id.*; #22 at 17 n.6. They assert that the information Porsche seeks is available to the German court because if the Hancock entities, "as investment managers to their clients/affiliates [the Hancock plaintiffs in the foreign proceedings], have their clients' transactional data, investment strategies, and information regarding their decision-making, the same information would, by definition, be in their clients' possession, custody[,] or control, as well, because as clients they controlled their agents."(#22 at 21.)

The court does not accept this argument, because first, it is not clear to the court that the Hancock entities are class members to the action in Germany or that they are essentially the same as the Hancock plaintiffs. *See In re Porsche Automobil Holding SE*, 15-mc-417 (LAK), 2016 WL 702327, at **7–8 (S.D.N.Y. Feb. 18, 2016) (rejecting the argument that a party's investment manager and general partner constitute the same entity as the party in the context of a foreign hearing with respect to a § 1782 application.) Second, most damaging to the Hancock entities' argument, the plaintiffs in the Braunschweig Model Case have told the German court that they do not possess the information Porsche seeks, (#3 at 13 ¶29), and the Hancock entities' counsel suggested at oral argument before this court that the Hancock plaintiffs likely do not have the information. (#55 at 49, ll. 12–21.)

A recent, related case in the Southern District of New York is instructive. In *In Re: Ex Parte Application of Porsche Automobil Holding SE*, No. 1:19-mc-00166-RA-SDA (S.D.N.Y. Jun. 25, 2019) (the Elliott action), District Court Judge Ronnie Abrams considered whether Porsche was entitled under § 1782 to the same categories of discovery Porsche requests in this matter, from "certain investment advisers and fund managers of plaintiff funds [the Elliott respondents] that are suing Porsche in German proceedings." (#28-4 at 3, ll. 19–21 (transcript of hearing).) In a ruling from the bench on June 25, 2019, the court rejected the argument of the Elliot respondents that they were "close affiliates with parties in one of the German actions" and thus were effectively parties in that action. *Id*. at 34–35, ll. 24–3. Finding that the "respondents do not dispute that the German courts lack jurisdiction to order them to produce the information that [Porsche] seeks[,]" *id*. at 35, ll. 20–22, and rejecting the argument that investment managers and their clients are the same entities for purpose of the litigation, *id*. at 36, ll. 11–17, the court found that the first discretionary factor weighed in favor of Porsche. *Id*. at 42, ll. 21–23. Ultimately, the court ordered the Elliott respondents to produce discovery, although the court narrowed the subpoena and ordered that the discovery be subject to a strict protective order. *Id*. at 42–43, ll. 21–1.

In sum, because the evidence Porsche seeks is not available absent this court's assistance, the first *Intel* factor weighs in Porsche's favor.

2. The German courts appear to be receptive to discovery assistance from the United States.

The second *Intel* factor also weighs in Porsche's favor. "[A] court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to US federal-court judicial assistance." *Intel*, 542 U.S. at 264. Courts "have been instructed

to tread lightly and heed only clear statements by foreign tribunals" that they would not welcome § 1782 assistance. *In re OOO Promnesfstroy*, 2009 U.S. Dist. LEXIS 98610, at *20; *Euromepa SA v. Esmerian, Inc.*, 51 F.3d 1095, 1099–1100 (2d Cir. 1995) (" [W]e do not read [§ 1782] to condone speculative forays into legal territories unfamiliar to federal judges.").

The fact that the Higher Regional Court in Braunschweig specifically requested "practical examples" for calculating damages shows that the court would be receptive to the discovery Porsche seeks. Porsche further points out that German courts are continuing to accept evidence obtained from the other plaintiffs in the numerous other, individual German actions. (#29 at 15.) *See Chevron*, 754 F. Supp.2d at 261–62 (second *Intel* factor weighed in favor of discovery when foreign court "appear[ed] to still be accepting the submission of documents" from other jurisdictions); *Schmitz v. Berstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (district court did not abuse its discretion in denying a § 1782 request when German government officials specifically objected to present discovery requests).

3.  <u>There is no evidence that Porsche's request is made in bad faith.</u>

The third *Intel* factor weighs in Porsche's favor. The requirement that a district court "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or the policies of a foreign country or the United States[,]" *Intel*, 542 U.S. at 265, boils down to whether the discovery is being sought in bad faith. *Chevron*, 754 F. Supp.2d at 262; *see also In re Application of Pro-Sys Consultants*, No. 16-mc-91016-PBS, 2016 U.S. Dist. LEXIS 104184, at *6 (D. Mass. Aug. 5, 2016) (absent a clear statement from the court, respondent failed to demonstrate that applicants were "engaged in an effort to thwart a prohibition on foreign depositions" under third *Intel* factor).

In connection with their insistence that they are class members in the German actions, the Hancock entities vigorously argue that Porsche is seeking discovery from "individual absent class members concerning their individual claims – which is generally impermissible and inconsistent with the German class action system." (#22 at 17.) They maintain that forcing individual class members to provide discovery discourages participation in class actions. (#55 at 19, ll. 15–17.) Porsche is acting in bad faith, the argument goes, because "the subpoenas are part of a concerted effort to discourage individual investors from seeking redress in Germany." (#36 at 12.) The Hancock entities also argue that, by filing its § 1782 application, Porsche is attempting "to aggravate an already substantial imbalance in the parties' relative access to evidence[.]" (#22 at 23.)

The court rejects these arguments. While the Hancock entities cite multiple United States cases for the proposition that discovery from individual class members is generally not permitted in class action litigation in the United States, none of the cited cases involve applications for foreign discovery made pursuant to 28 U.S.C. § 1782. *Id.* at 22–23. Even if class action litigation is substantially similar in the United States and Germany, the Supreme Court made clear in *Intel* that § 1782 does not impose a foreign discoverability requirement. *Intel*, 542 U.S. at 253; *see Minis,* 2014 U.S. Dist. LEXIS 54220, at *6 (citations omitted) ("[p]etitioners are not required to show that the information they seek would be discoverable (or admissible) in" foreign litigation). The Supreme Court has in addition rejected the argument that "a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Intel*, 542 U.S. at 263 ("Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here.").

Although, for the reasons detailed *infra*, the court finds that Porsche's discovery requests are too broad, Porsche still is entitled to seek discovery in order to defend its case and attempt to reduce its damages, in both the Model Case and the individual German action pending against it. *Chevron*, 754 F. Supp.2d at 262 (third *Intel* factor met when plaintiff sought to submit report as part of damages proceedings). At the September 17th hearing, Porsche's counsel provided a legitimate reason for seeking discovery from the Hancock entities, namely, that the Hancock plaintiffs had alleged one of the "higher . . . amounts" of damages of all the plaintiffs in the German actions. (#55 at 32, ll. 4–6.)

4.  Porsche's subpoenas should be narrowed so that they are not unduly burdensome or intrusive.

Concerning the fourth *Intel* factor, the Hancock entities reiterate their argument that "the marginal relevance" of Porsche's requested discovery "cannot outweigh the burden and intrusion it creates for" them. (#22 at 23.) At the September 17th hearing, the Hancock entities' counsel stated with regard to the definition of "relevant securities" and the information Porsche seeks about hedging strategies:

> Virtually every institutional investor [, including the Hancock entities,] has a diversified investment strategy because . . . the risks associated with one particular stock . . . you try to hedge against that . . . by a different stock. So you end up with a fund that has maybe hundreds of different stocks that covers different industries, entertainment industry, automotive industry, . . . oil industry, et cetera. That is to spread risks. That's what's called a diversified portfolio.
>
> . . . .
>
> [As a result, the Hancock entities] have hundreds and hundreds of other securities [besides Porsche and Volkswagen] that are part of that same fund [or portfolio], and [Porsche] would want information on that because, in [its] view, all these securities are related to each other because they are all part of the same hedging strategy because . . . diversification is, by definition, hedging against the risk of just going into one stock.

(#55 at 24–25, ll. 7–15, 22–3.) The Hancock entities further point out that information regarding their "investments and investment strategies and decision processes are commercially sensitive trade secrets" for which Porsche has not shown a substantial need without undue hardship under Fed. R. Civ. P. 45(d)(3)(C)(i)–(ii). (#22 at 16.)

Again, Judge Abrams' holding concerning Porsche's related § 1782 application in the Elliott action, in which, like the present case, Porsche sought information concerning "the sale and purchase of [Porsche] and Volkswagen [AG] shares and [the] respondents' investment strategies in choosing to buy or sell [the] shares," is informative. (#28-4 at 41, ll. 6–9.) The court found that the information Porsche sought could "be relevant to the overall losses suffered by the German plaintiffs and therefore to [Porsche's] damages defenses." *Id.*, ll. 9–11. The court concluded, however, that Porsche's subpoena was overbroad and unduly burdensome, because Porsche's proposed definition of "relevant securities," like Porsche's proposed definition here, "encompasses any security or securities issued by an entity or entities other than Volkswagen AG or Porsche . . . and referring, relating or connected with these entities' shares could be unders[tood] to include securities only remotely linked to respondents' shares in Volkswagen or [Porsche] or their investment strategies with regard to securities." *Id.* at 41–42, ll. 24–8 (internal quotation marks omitted). The court also agreed with the respondents that the respondents' investment strategies were clearly important to their business, and so imposed a strict confidentiality order. *Id.* at 42, ll. 14–19.

This court agrees with Judge Abrams' assessment that Porsche's proposed definition of a "relevant security" is too broad. (#58 at 3.) *See Sandra Holdings*, 2019 U.S. Dist. LEXIS 116920, at *6 (citations omitted) (noting that "§ 1782 should not be used to enable a fishing expedition"); *Mees*, 793 F.3d at 302 (quoting *Euromepa*, 51 F.3d at 1101) ("it is far preferable for a district court

to reconcile whatever misgivings it may have about the impact of . . . participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright"). The court therefore orders the parties to confer concerning a narrowed definition of "relevant securities." This court received a letter on behalf of the Hancock entities on October 29, 2019, in which they complain that the definition of relevant securities that Judge Abrams finally endorsed was still too broad. (#59 at 1.) Therefore, in accordance with the offer made by Porsche in its statement dated September 20, 2019, to meet and confer in order to further narrow the categories of relevant information Porsche seeks (#57 at 5), the court orders the parties to attempt to agree on a more narrow definition.

The court, however, declines to limit Porsche's other document requests. Porsche is seeking documents within a limited three-year period, from 2012 until the end of 2015, the year the EPA published its notice of violation to Volkswagen AG regarding the diesel issue. *See Sandra Holdings*, 2019 U.S. Dist. LEXIS 116920, at **14–16 (discovery covering thirty years of business transactions would be unduly intrusive or burdensome, but discovery "limited in scope to information regarding the alleged related-party transaction" was permissible). However, like the court in the Elliott action, given the importance of its investment strategies to the Hancock respondents' business, the court will not approve a final discovery order until the parties provide a strict confidentiality order.

D. Porsche is permitted to take oral deposition testimony pursuant to Rule 30(b)(6), but the scope of the depositions should be narrowed according to the modified definition of a "relevant security."

The Hancock entities further argue that, "[e]ven if Porsche is permitted to seek document discovery, Porsche's deposition subpoenas should be quashed because they are duplicative and cumulative of the information sought in Porsche's document requests and not the least intrusive

means." (#22 at 19.)[6] According to the Hancock entities, "[a]ny topics not covered by document

requests [such as corporate structure], or any cumulative information (such as follow-up questions,

---

[6] Porsche's proposed subjects of examination included the following:

1.  Your corporate structure, including, but not limited to, the identity and responsibilities of any Person that manages, is managed by, or is affiliated with You, and the relationships between and among You and any such Persons.

2.  Your knowledge of, or communications about, any actual, intended, contemplated, or possible transaction in, or holding of, any Relevant Securities between January 1, 2012 and December 31, 2015, including, but not limited to, the decision or strategy to enter into, terminate, or hedge any investment or transaction in Relevant Securities, as well as the specific contractual conditions underlying the respective transaction, in particular the price of any sale or purchase of Relevant Securities and the book value, if any, of the Relevant Securities on the day of the respective transaction.

3.  Your knowledge of, or communication above, the amount and type of Relevant Securities held by You or any fund, account, or sub-account owned, managed, or controlled by You on January 1, 2012 and on September 21, 2015, as well as the book values of such Relevant Securities as of January 1, 2012 and September 21, 2015, and the specific contractual conditions, in particular prices, underlying the transactions by which the Relevant Securities were acquired.

4.  Your knowledge of, or communications about, the process by which Relevant Securities were transferred between the parties to each and every transaction identified in response to Subject to Examination No. 2, including, but not limited to, whether a certificate or share in a certificate was associated with the Relevant Security or Securities and the process by which any such certificate or share in a certificate was transferred between the parties to the transaction.

5.  Your knowledge of, communications about, or role in matching or allocating sales and purchase transactions of Relevant Securities identified in response to Subject of Examination No. 2 for internal accounting, tax accounting, or any other purposes.

6.  Your knowledge of, or communications about, Your rules, policies, procedures, or practices applicable to matching or allocating sale and purchase transactions in Relevant Securities.

7.  Your knowledge of, or communications about, fund account statements and depositary account statements referencing transactions in Relevant Securities.

8.  Your knowledge between January 1, 2012 and September 18, 2015 of, or communications made during the same time period about, emissions from or the environmental impact of

clarifications, or authentication) can be effectively addressed by way of interrogatories or depositions upon written questions." *Id.* at 20 (citations omitted).

"Once discovery is authorized under § 1782, the federal discovery rules . . . contain the relevant practices and procedures for the taking of testimony and the production of documents." *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007). Rule 45 provides that a party issuing a subpoena to non-parties, like the Hancock entities, is "to avoid imposing undue burden or expense" on them. Fed. R. Civ. P. 45(d)(1). While "[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" for discovery, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 755 F.3d 55, 59 (1st Cir. 2014) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 713 (1st Cir. 1998) (internal quotations marks omitted)), a party is ordinarily "free to choose its method of discovery[.]" *In re Enron Creditors' Recovery*, No. 01-16034 (AJG), 2007 WL 2680427, at *3 (S.D.N.Y. Sept. 6, 2007).

Depositions on written questions are generally disfavored. Porsche notes, "[a] party should not be prevented from questioning a live corporate witness in a deposition setting just because the topics proposed are similar to those contained in documents provided or in interrogatory questions answered." (#29 at 22 (quoting *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010)).) While information may have already been provided by other methods, such as document production, a live "witness may still be useful to testify as to the interpretation of the papers[.]" *Id.*

---

Volkswagen, Audi, or Porsche diesel vehicles, including, but not limited to, Your knowledge of, or communications about, the use of clean diesel technology, turbocharged direct injection or TDI engines, or defeat devices in Volkswagen, Audi, or Porsche diesel vehicles.

(#2-3 at 7–9.) Porsche's proposed definition of a "relevant security" remains the same as its proposed definition within its document requests. *Id.* at 6–7.

Although depositions on written questions can be appropriate in "limited circumstances . . . where the issues to be addressed by the witness are narrow and straightforward[,] and the hardships of taking an oral deposition would be substantial," *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989), this is not the case here. Porsche's proposed deposition topics include multiple, complex matters regarding the Hancock entities' investment strategies with respect to Porsche and Volkswagen AG securities.

The Hancock entities' motion to quash Porsche's § 1782 application is therefore denied with respect to Porsche's subpoenas for 30(b)(6) depositions. However, Porsche's proposed definition of a "relevant security" will be modified in the same way as its definition of a "relevant security" is modified under its document requests. The term "including, but not limited to," from Porsche's proposed subjects of examination is also changed to simply read as "including" Porsche's proposed topics. *See Dongguk Univ.*, 270 F.R.D. at 74 (quoting *Tri-State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125 (D.D.C. 2005) ("the language 'including but not limited to' is overbroad when identifying a 30(b)(6) topic and defeats the purpose of giving notice of the topics to be discussed in the deposition")).

Although Porsche is correct that live oral testimony often helps parties interpret documents already produced, the court cautions Porsche and the Hancock entities "that 30(b)(6) depositions can be used to test theories, challenge facts[,] and fill in information gaps, but they cannot be used to reinvent the wheel by asking questions that have already been completely answered" by the Hancock entities' document production. *Dongguk Univ.*, 270 F.R.D at 80; *see also Tri-State Hosp. Supply Corp.*, 226 F.R.D. at 126 (refusing to preclude plaintiff from asking 30(b)(6) witnesses about certain topics because they were already the subject of previous requests, but cautioning

plaintiff against abusing that power by asking questions that were "nothing more than duplicative of the discovery already produced").

Finally, the court strongly "encourages the parties to meet and confer in an effort to trim any remaining fat" off the subpoena requests for both document production and 30(b)(6) depositions, and "narrow[] custodians and search terms for retrieval of electronically stored information where possible." *See In re Porsche*, 2016 WL 702327, at *10.

### E. The Hancock entities are not entitled to reciprocal discovery.

The Hancock entities argue that "[i]f Porsche's requests are permitted, the court should allow for reciprocal discovery." (#22 at 24.)[7] They maintain that "[o]therwise, granting broad

---

[7] Specifically, the Hancock entities seek the following, extensive list of discovery:

(a) All minutes of Porsche's supervisory and management board meetings from January 1, 2005 through December 31, 2015;

(b) All minutes of Porsche's shareholder committee meetings from January 1, 2005 through December 31, 2015, including, but not limited to, any shareholder committee meetings attending by Prof. Ferdinand Piech, Dr. Wolfgang Porsche, Dr. Hans Michael Piech, Dr. Ferdinand Oliver Porsche, Prof. Ultich Lehner, Prof. Helmut Sihler, and/or Dr. W. Zugel;

(c) All documents and communications exchanged by and between Porsche and Volkswagen concerning, (i) the development and/or use of any defeat device or defeat device software, or (ii) EPA regulations concerning NOx emissions;

(d) All draft communications to Porsche's or Volkswagen's shareholders, whether generated or exchanged by and among Porsche and/or Volkswagen, concerning (i) the U.S. market for diesel vehicles, (ii) Porsche's and/or Volkswagen's strategy for marketing diesel vehicles in the United States, and/or (iii) the relative importance of the U.S. diesel vehicle market for Porsche or Volkswagen;

(e) All documents and communications concerning Jones Day's external investigations of Volkswagen;

(f) All documents Porsche and/or Volkswagen provided to Jones Day in connection with its external investigations of Volkswagen;

discovery to Porsche would exacerbate the already substantial informational asymmetry in the German [a]ctions, and turn [§] 1782 into an instrument of abuse, incompatible with the equality-of-arms foundations of discovery." *Id.* The Hancock entities maintain that Porsche "has steadfastly avoided discovery in the German [a]ctions." (#23 at 9 ¶ 27.) The Hancock entities also argue that reciprocal discovery is appropriate because "Porsche is not present in the United States, and thus cannot be subject to a separate [§] 1782 application." (#22 at 24.)

Reciprocal discovery is unwarranted. The Hancock entities correctly point out that courts have discretion to condition § 1782 relief upon the "reciprocal exchange of information[,]" *Intel*, 542 U.S. at 262 (citing *Euromepa*, 51 F.3d at 1102), and that reciprocal discovery can be appropriate when an entity like Porsche is not present within the United States. *See Consorcio Minero, SA v. Renco Grp., Inc.*, No. 11 MC 354, 2012 U.S. Dist. LEXIS 44317, at *9 (S.D.N.Y. Mar. 29, 2012). However, "[g]rants of discovery under § 1782 are not contingent on the requisite party's acquiescence to reciprocal discovery." *In re Imanagement Servs.*, No. Misc. 05-89 (FB), 2005 U.S. Dist. LEXIS 17025, at **21–22 (E.D.N.Y. Aug. 16, 2005). The Second Circuit explained: "Congress intended . . . that 28 U.S.C. § 1782 would provide an avenue for judicial assistance to foreign or international tribunals whether or not reciprocal arrangements existed. . . . 28 U.S.C. § 1782 is a one-way street. It grants wide assistance to [some] but demands nothing in

---

(g)  All documents that Jones Day provided to Porsche (including the final report, drafts of the report, video tapes it created, memoranda/analyses, etc.) in connection with its external investigations of Volkswagen.

(#22-1 at 2–3 ¶ 4.) The Hancock entities "further seek deposition testimony of Porsche pursuant to Rule 30(b)(6) concerning Porsche's knowledge and suspicions (including the knowledge and suspicions of supervisory or management board members or high-level executives) of the use of any defeat device or defeat device software by either Porsche, Volkswagen[,] or any of their affiliates." *Id.* at 3 ¶ 5.

return." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101–02 (2d Cir. 1992) (internal citations and quotation marks omitted); *Euromepa*, 51 F.3d at 1097.

Various factors weigh against allowing the Hancock entities to obtain reciprocal discovery. First, the Hancock entities fail to indicate whether any of the evidence they seek is within the district. *See In re Imanagement Servs.*, 2005 U.S. Dist. LEXIS 17025, at *22 (denying respondent's request for reciprocal discovery when respondent failed to identify any documents or witnesses within the district). None of the Hancock entities are parties to any of the German proceedings. *See In re Sampedro*, Civil No. 3:18mc47(JBA), 2019 U.S. Dist. LEXIS 1467, at *8 (D. Conn. Jan. 3, 2019) (noting that multiple courts have held that non-parties to the foreign proceedings are "often not entitled to reciprocal discovery"); *see also Deposit Ins. Agency v. Leontiev*, 17-MC-00414(GDB)(SN), 2018 U.S. Dist. LEXIS 122705, at *34 (S.D.N.Y. Jul. 23, 2018) ("unclear what purpose reciprocal discovery would serve" when person was not a party to the foreign proceeding); *Consorcio Minero*, 2012 U.S. Dist. LEXIS 44317, at **1–2, *9 (allowing reciprocal discovery when the respondent to § 1782 application was a party to the foreign proceeding). Further, the Hancock entities seek a myriad of documents and deposition testimony, without specifying the purpose this discovery serves. *See In re Republic of Ecuador*, Nos. C-10-80225 MISC CRB (EMC), C-10-80324 MISC CRB (EMC), 2011 WL 736868, at *10 (N.D. Ca. Feb. 22, 2011) (denying request for reciprocal discovery when respondents requested a "wide range of reciprocal discovery . . . far afield" from the materials the petitioners sought); *see also In re Furstenberg Fin. SAS*, No. 16-cv-60266-BLOOM, 2018 U.S. Dist. LEXIS 22666, at *8 (S.D. Fla. Jan. 10, 2018) (same).

IV.  <u>Conclusion</u>.

For the above reasons, John Hancock Advisers, LLC, John Hancock Investment Management Services, LLC, and John Hancock Life Insurance Co. (U.S.A.)'s motion to vacate or modify the court's *ex parte* order permitting discovery and to quash or modify the subpoenas (#21) is GRANTED in part. The definition of "relevant security" within both the proposed discovery requests and 30(b)(6) proposed topics of examination shall be modified. The parties shall confer, and no later than December 5, 2019, either agree on a revised definition or file a status report with this court setting out any areas of disagreement. By that same date, the parties shall file a proposed confidentiality order, or set out any areas of disagreement in a status report. The motion (#21) is otherwise DENIED.


                                                  /s/ M. Page Kelley
                                                  M. PAGE KELLEY
                                                  United States Magistrate Judge


November 6, 2019