UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In Re Ex Parte* Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings | CIVIL ACTION NO. 19-mc-91129-LTS |

MEMORANDUM AND ORDER ON MOTION TO INTERVENE (#66).

KELLEY, U.S.M.J

I. Introduction.

The present motion stems from this court's November 6, 2019 Order (#60), regarding John Hancock Advisors, LLC, John Hancock Investment Management Services, LLC, and John Hancock Life Insurance Co. (USA)'s (the Hancock entities or Hancock respondents) motion to vacate or modify the district court's *ex parte* order permitting discovery pursuant to 28 U.S.C. § 1782 and to quash or modify the resultant subpoenas (motion to vacate). (#21.)

On April 5, 2019, Porsche Automobil Holding SE (Porsche) filed an application under 28 U.S.C. § 1782 to serve subpoenas on the Hancock entities. (#1 at 1.) The subpoenas sought production of documents and deposition testimony for use in multiple civil actions in various German courts, by large investors (the German actions). (#2 at 5.)

The German actions involve approximately 200 separate legal proceedings, including a "Model Case" in Braunschweig, which is comparable to, though not the same as, class action litigation in the United States, and an individual action filed by John Hancock Worldwide Investors PLC and Craig Bromley as Trustee of John Hancock Variable Insurance Trust, John Hancock Funds II, John Hancock Funds III, and John Hancock Strategic Series for JHF Income Fund (the Hancock plaintiffs) in Stuttgart. (#2 at 5, 9–10; #2-1 at 3–4; #66 at 1.) Unlike the Hancock

1

plaintiffs, the Hancock entities, from whom Porsche sought discovery under § 1782, are not parties to either German case, but rather, are general partners or investment managers of the Hancock plaintiffs. (#2-1 at 3–4.)

On April 9, 2019, District Court Judge Leo Sorokin entered an Order granting Porsche's § 1782 application. (#11 at 1–2.) Porsche's subpoenas were served on April 16 and 17, 2019. (#13 at 1.) On June 18, 2019, the Hancock entities filed their motion to vacate. (#21.) Porsche opposed (#29), and Judge Sorokin referred the Hancock entities' motion to the undersigned. (#31.) After oral argument (#54) and the parties' submission of a joint memorandum, setting out the discovery the Hancock entities had already provided (#57), this court entered the November 6th Order, granting the Hancock entities' motion to vacate, in part. (#60.) On November 21, 2019, the Hancock entities filed objections to the November 6th Order with Judge Sorokin. (#62.) On November 27, 2019, the Hancock entities' request for a stay of the November 6th Order was granted, pending Judge Sorokin's decision on the Hancock entities' objections. (#65.)

On December 2, 2019, the Hancock plaintiffs filed the present motion to intervene pursuant to Federal Rules of Civil Procedure 24(a) and 24(b). (## 66, 67.) Porsche opposed (#74), and the Hancock plaintiffs filed a reply. (#82.)

II. Statement of Facts.

The relevant facts are set forth in detail in this court's November 6th Order on the Hancock entities' motion to vacate. (#60 at 3–10.) Beginning around April 2016, the German plaintiffs, who are various investors in Porsche securities, began to file suit against Porsche in Germany, pursuant to section 37b of the German Security Trading Act, and sections 823 and 826 of the German Civil

Code, alleging that Porsche failed to disclose or inaccurately disclosed emissions modifications in certain diesel vehicles manufactured by Volkswagen AG. (#3 ¶¶ 7, 11.)[1]

Porsche sought discovery from the Hancock entities for use in both the Model Case and in the individual Hancock action pursuant to 28 U.S.C. § 1782. (#55 at 43.)[2] Porsche maintained that the information sought was relevant to various defenses in both cases, primarily related to damages calculations. (#2 at 10–14.) Porsche appears to have subpoenaed the Hancock entities, rather than the Hancock plaintiffs themselves, partly because the plaintiffs in the Braunschweig Model case have told the German court that they do not possess the information Porsche seeks. (#3 ¶ 29.) The Hancock entities' counsel also suggested at oral argument on the motion to vacate that the Hancock plaintiffs likely do not have the information. (#55 at 49.)

The Hancock entities vigorously argued in their memorandum in support of their motion to vacate that Porsche's discovery requests were vastly overboard, "grossly disproportionate to the needs of the German [a]ctions[,] and plainly designed to harass [them] with unnecessary discovery burdens." (#22 at 6.)

---

[1] Porsche currently holds more than 50% of the voting rights in Volkswagen AG. (#3 at ¶ 3.)

[2] Section 1782(a) provides that a federal district court may order a person or entity who resides or is found in the district to give testimony or produce documents for use in a proceeding in a foreign or international tribunal, upon the application of any interested person. 28 U.S.C. § 1782(a); *Intel Corp. v. Advanced Micro Device, Inc.*, 542 U.S. 241, 246 (2004). To obtain discovery under § 1782, as a preliminary matter, a petitioner must satisfy three requirements: (1) the order must be issued in the district court of the district in which the respondent resides or is found; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by an interested person. *Chevron v. Shefftz*, 754 F. Supp.2d 254, 260 (D. Mass. 2010). The material being sought cannot be protected by "any legally applicable privilege." 28 U.S.C. § 1782(a); *In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018). As is the case here, the entity from whom discovery is sought need not be a party to the foreign proceeding.

In holding that Porsche was entitled to at least some of the discovery it sought, the court determined that § 1782's statutory factors were met. (#60 at 12–14.) The court also determined that, while the first three discretionary factors the Supreme Court articulated in *Intel*[3] weighed in favor of discovery, Porsche's subpoenas "should be narrowed so they are not unduly burdensome or intrusive" under *Intel's* fourth factor. *Id.* at 14, 19. Specifically, Porsche's proposed definition of a "relevant security" was overbroad. *Id.* at 20. Porsche and the Hancock entities were ordered to "confer, and no later than December 5, 2019, either agree on a revised definition" of a relevant security or file a status report with the court setting out any unresolved issues. *Id.* at 28. While Porsche was permitted "to take oral deposition testimony pursuant to Rule 30(b)(6)," Porsche and the Hancock entities were required to narrow the scope of the depositions according to their agreed-upon, modified definition. *Id.* at 21. The Hancock entities' request for reciprocal discovery was denied. *Id.* at 25–27. Rather than conferring or filing a status report, the Hancock entities filed objections to the November 6th Order with Judge Sorokin and also filed the present motion to intervene.

The Hancock plaintiffs' motion to intervene is denied. Not only is the Hancock plaintiffs' motion untimely under Rules 24(a) and 24(b), it is clear from their briefing that it is simply an attempt to relitigate the court's November 6th Order, when their objections to that Order are already pending with the district court.

---

[3] After a court determines that § 1782's statutory requirements are met, it evaluates four discretionary factors: (1) "whether the person from whom discovery is sought is a party to the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent'"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'"; and (4) "whether the request is 'unduly intrusive or burdensome' to the extent that it should either be 'trimmed' or rejected outright." *In re Schlich*, 893 F.3d at 47 (quoting *Intel*, 542 U.S. at 264–65).

III. <u>Legal Analysis</u>.

A. <u>Rule 24(a): Intervention as of Right</u>.

The Hancock plaintiffs first argue they are entitled to intervene as of right pursuant to Rule 24(a). (#67 at 4.) They maintain that their "request to intervene is a timely response to [the November 6, 2019] Order, which showed that their interests as parties to one of the German Actions – in reciprocity and in resisting discovery to be used against them – are not adequately represented by the [Hancock entities]." *Id.* This argument is unavailing.

Federal Rule of Civil Procedure 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To prevail on a motion to intervene as of right under Rule 24(a)(2), a putative intervenor must demonstrate:

> (i) the timeliness of [his] motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede [his] ability to protect that interest; and (iv) the lack of adequate representation of [his] position by an existing party.

*Candelario-Del-Moral v. UBS Fin. Servs. (In re Efron)*, 746 F.3d 30, 35 (1st Cir. 2014) (quoting *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009)). "The putative intervenor 'must run the table and fulfill all four of these preconditions.'" *In re Efron*, 746 F.3d at 35 (quoting *Pub. Serv. Co. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)).

The Hancock plaintiffs fail to show that their motion to intervene is timely. "[T]imeliness . . . is the sentinel that guards the gateway to intervention." *Id.* at 35; *see R&G Mortg. Corp.*, 584 F.3d at 7 (quoting *Banco Popular de P.R. v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992)

("when intervention is at issue, timeliness is the 'prevenient question'")). As a general matter, courts consider four factors in evaluating whether a motion to intervene is timely:

> (i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to the existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

*Id.* at 7 (citing *Greenblatt*, 964 F.2d at 1231). "Each of these factors must be appraised in light of the posture of the case at the time the motion is made." *Id.* (citing *Geiger v. Foley Hoag LLP Ret. Plan*, 531 F.3d 60, 65 (1st Cir. 2008)). The First Circuit has held that "the most important factor is" the first, "the length of time that the putative intervenor knew or reasonably should have known that his interest was imperiled before he deigned to seek intervention." *In re Efron*, 746 F.3d at 35.

Contrary to their contentions,[4] the Hancock plaintiffs knew that their interests had been implicated when Porsche filed its original § 1782 application in April 2019, approximately seven months before they filed their motion to intervene.[5] "One of the core purposes of the timeliness requirement is to prevent disruptive, late-stage intervention that could have been avoided by the

---

[4] The Hancock plaintiffs argue that their motion to intervene is timely because they believed they had joined in the Hancock entities' original motion to vacate. (#67 at 6.) Because the Hancock entities misleadingly characterized themselves, together with the Hancock plaintiffs, as the "Hancock Class Members" multiple times throughout their motion to vacate (even though it is unclear whether nonparties can be considered "class members" of a model case under German law), the Hancock plaintiffs argue that the motion to vacate was brought on their behalf. (#67 at 6; #82 at 2.) They maintain that they filed their present motion to intervene within a reasonable time after the November 6th Order clearly rejected their view. (#67 at 6.)

This argument is disingenuous. The very first page of the Hancock entities' motion to vacate concedes that the respondents to the subpoenas are "John Hancock Advisors, LLC, John Hancock Investment Management Services, LLC and John Hancock Life Insurance Co. (USA)[,]" all technically non-parties to the German action, and that they were the entities who filed the motion to vacate. (#21 at 1); *see also* #22 at 6, 21; #36 at 13; #50-1 ¶ 1.

[5] The Hancock entities (respondents) and the Hancock plaintiffs share the same counsel. (#22-1 ¶ 2; #37 ¶ 1.)

exercise of reasonable diligence." *R& G Mortg. Corp.*, 584 F.3d at 9 (citations omitted). The Hancock plaintiffs' delay, coupled with the fact that the proceedings have nearly concluded, warrants denying the Hancock plaintiffs' motion to intervene as untimely. *See In re Efron*, 746 F.3d at 35–36; *R& G Mortg. Corp.*, 584 F.3d at 8–9 (characterizing a delay of just two and-a-half months as "inexcusable"); *see also Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7–8 (1st Cir. 1989); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 15 (D. Mass. 2013) (seven-month wait to intervene too long, in context of litigation).

The additional timeliness factors weigh against intervention. In making their remaining arguments, regarding potential prejudice to Porsche, potential prejudice to themselves as the putative intervenors, and mitigating circumstances, the Hancock plaintiffs make no secret that, in attempting to intervene, they are simply trying to relitigate the issues the court already considered and rejected in evaluating the Hancock entities' motion to vacate. Specifically, the Hancock plaintiffs maintain that allowing them to intervene will not prejudice Porsche under the second prong because they are only seeking reconsideration of "the double-edged sword effect" of the November 6th Order granting discovery to Porsche but denying reciprocal discovery to the Hancock entities. (#67 at 7.) The Hancock plaintiffs argue that, unlike Porsche, they "will suffer significant prejudice" if their motion is denied, because "they will be severely disadvantaged in the German [a]ctions" under the third prong "by the increased imbalance in the parties' access to relevant evidence[.]" *Id.*; *see also* #82 at 2.

These arguments lack merit. While prejudicing Porsche, for the reasons Porsche articulates in its opposition (#74 at 11–12), denying the Hancock plaintiffs' motion to intervene would not necessarily ameliorate any potential prejudice to the Hancock plaintiffs in the German action. *See Greenblatt*, 964 F.2d at 1232. The November 6th Order and accompanying memorandum made

7

clear that the critical question under the first *Intel* factor is not whether the target of the subpoena is a participant in the foreign action, but rather, "whether the information targeted is within the foreign tribunal's jurisdictional reach." (#60 at 14 (citing *Chevron*, 754 F. Supp.2d at 261).) The court cited multiple reasons for denying the Hancock entities' requests for reciprocal discovery, in addition to the fact that the Hancock entities appeared to be non-parties to the German proceedings. *Id.* at 25–27.

Finally, the court considers the Hancock plaintiffs' attempt to relitigate the issues already considered and rejected in evaluating the Hancock entities' motion to vacate to be a waste of time and resources, particularly in light of the fact that their objections are already pending before Judge Sorokin. The Hancock plaintiffs' actions are a "special factor" strongly militating against intervention. *See R&G Mortg. Corp.*, 584 F.3d at 7, 10.

Because the Hancock plaintiffs' motion to intervene is clearly untimely, they cannot prevail, regardless whether the remaining elements of Rule 24(a)(2) are met. *In re Efron*, 746 F.3d at 37 (Putative intervenor "knew (or, at least, should have known) that [suit] threatened his financial interests. . . . [I]nstead of exercising vigilance, [plaintiff] chose to sleep upon his rights. Under these circumstances, the . . . court acted well within the ambit of its discretion both in deeming [putative intervenor's] motion as untimely and in refusing to grant it"); *R& G Mortg. Corp.*, 584 F.3d at 10; *Photographic Illustrators Corp. v. Orgill, Inc.*, 316 F.R.D. 45, 50 (D. Mass. 2016).

B.  Rule 24(b): Permissive Intervention.

The Hancock plaintiffs further argue that intervention is "appropriate under Rule 24(b) because [their] opposition to the [§]1782 [a]pplication and their claim for reciprocal discovery raise questions of law and fact they have in common with the Hancock Respondents [Hancock entities]." (#67 at 10.) This argument requires minimal discussion. "The First Circuit has held that

'when a putative intervenor seeks both intervention as of right and permissive intervention, a finding of untimeliness with respect to the former normally applies to the latter (and, therefore, dooms the movant's quest for permissive intervention).'" *Photographic Illustrators Corp.*, 316 F.R.D. at 50–51 (quoting *R& G Mort. Corp.*, 584 F.3d at 11). "Furthermore, the timeliness inquiry applies more strictly, and . . . courts have broader discretion, with respect to a motion for permissive intervention." *Id.* at 51 (citing *R& G Mort. Corp.*, 584 F.3d at 8).

The Hancock plaintiffs' attempt to intervene fails under both Rule 24(a) and Rule 24(b).

IV.  Conclusion and Order.

For the foregoing reasons, the motion to intervene is denied.

February 3, 2020                                            /s/ M. Page Kelley
                                                            M. Page Kelley
                                                            United States Magistrate Judge